# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 21-CR-2068-CJW-MAR |
| vs. | **ORDER** |
| ALISSA LYNN KUCKO and ABYEHUN TEFERI, | |
| Defendants. | |

## I. INTRODUCTION

This matter is before the Court on the Report and Recommendation ("R&R") of the Honorable Mark A. Roberts, United States Magistrate Judge, recommending that the Court deny defendants' Motion to Suppress Evidence. (Doc. 39).

On October 18, 2021, defendants filed a joint Motion to Suppress. (Doc. 27). The government timely resisted the motion. (Doc. 31). Defendants filed a response. (Doc. 35). On November 2, 2021, Judge Roberts held a hearing on the motion (Doc. 38) and on November 15, 2021, he issued his R&R, recommending that the Court deny defendants' motion (Doc. 39). On December 13, 2021, defendants timely filed their objections to the R&R. (Doc. 44).

For the following reasons, the Court **overrules** defendants' objections, **adopts** Judge Roberts' R&R, and **denies** defendants' Motion to Suppress.

## II. STANDARD OF REVIEW

The Court reviews Judge Roberts' R&R under the statutory standards found in Title 28, United States Code, Section 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which

objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

*See also* FED. R. CIV. P. 72(b) (stating identical requirements). While examining these statutory standards, the United States Supreme Court explained:

Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court may review de novo any issue in a magistrate judge's report and recommendation at any time. *Id*. If a party files an objection to the magistrate judge's report and recommendation, the district court must review the objected portions de novo. 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate [judge]'s report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review is non-deferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991); *see also Doe v. Chao*, 540 U.S. 614, 620–19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94–1609, at 3, reprinted in 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect Section 636(b))). Thus, although de novo review generally entails review of an entire matter, in the context of Section 636 a district courts required de novo review is

limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1).

Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger de novo review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity of . . . retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate [judge]." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has concluded that general objections require "full *de novo* review" if the record is concise. *Id.* Even if the reviewing court must construe objections liberally to require de novo review, it is clear to this Court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Ass'n, Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996).

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996); *see also Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Federal Rule of Civil Procedure 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed).

The Court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the

3

Case 6:21-cr-02068-CJW-MAR    Document 46    Filed 12/27/21    Page 3 of 15

Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985) (citation omitted). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Med. Clinic, P.C.*, 498 F.3d 837, 847 (8th Cir. 2007), but a district court may still reject the magistrate judge's report and recommendation when the district court "is left with a definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this Court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* FED. R. CIV. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the Court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153–54. Thus, although a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.

### III. FACTUAL BACKGROUND

Based on the evidence submitted at the suppression hearing, Judge Roberts made extensive factual findings. Defendants state that they object to various factual findings. (Doc. 44, at 1). But defendants fail to object with any specificity to any particular factual finding. The one factual finding defendants do discuss involves their agreement with Judge Roberts' finding but not his conclusion. (*Id.* at 8).

After reviewing the record—including the parties' arguments, exhibits, and the video evidence—there is no merit to defendants' objections to unspecified various factual findings. Thus, the Court overrules defendants' objections to this part of the R&R. On review, the Court finds that Judge Roberts thoroughly and accurately summarized the relevant facts in his R&R. Finding no plain error, the Court adopts and incorporates the R&R's factual findings and notes the point at which defendants' agreement diverges from Judge Roberts.

> ATF Task Force Officer Joseph C. Saunders, who is also an officer with the Waterloo, Iowa Police Department, applied for the warrant and submitted the affidavit in support of the application. (Def. Ex. A.) The application was sworn to before me and I issued the warrant. (*Id.* at 1, 16.) Officer Saunders has an associate degree in police science and is a graduate of the Iowa Law Enforcement Academy. (*Id.* at 3.) He has worked in law enforcement since 1989. (*Id.*) Officer Saunders attested that a Fleet Farm employee identified as "Employee-1" contacted the Waterloo Police Detective Bureau on August 9, 2021 and provided the following information. (*Id.* ¶ 8.)
>
> **A. Events of July 2 and July 19, 2021**
> On July 2, 20201, Defendants went to the firearms department of a Fleet Farm store where Mr. Teferi, who was accompanied by Ms. Kucko, attempted to purchase a Stoeger Model STR-9, 9mm semi-auto pistol bearing serial number T6429-21W06241. (*Id.*) Mr. Teferi was unable to purchase the pistol due to the results of an NICS background check. (*Id.*) On July 19, 2021, Ms. Kucko returned to Fleet Farm and purchased a Stoeger Model STR-9, 9mm semi-auto pistol bearing serial number T6249-

5

21T00104 ("the Stoeger") from Employee-3. (*Id.* ¶¶ 10, 14.) Ms. Kucko knew what firearm she wanted without receiving any assistance. (*Id.* ¶ 10.)

### B. Events of July 27, 2021

On July 27, 2021, Defendants entered Fleet Farm together. (*Id.* ¶ 11.) Officer Saunders's affidavit states, "Employee-1 observed that TEFERI had the firearm that Kucko purchased in his possession."[1] (*Id.*) Mr. Teferi was looking for a holster to fit "his" firearm, which, according to Employee-2, who assisted Mr. Teferi that day, he identified as a Stoeger, matching a brand of firearm they sell at Fleet Farm. (*Id.* ¶ 12.) Employee-1 and Employee-2 stated that Mr. Teferi referred to the gun as "my gun," "his gun," and "his firearm." (*Id.* ¶¶ 11-13.) Employee-2 then realized who Mr. Teferi was and recognized Ms. Kucko as the same person who purchased the Stoeger Mr. Teferi was carrying. (*Id.* ¶ 12.)

After recognizing Mr. Teferi, Employee-2 asked him questions, including whether Mr. Teferi had ever shot the firearm or if he had taken it apart. (*Id.* ¶ 13.) Mr. Teferi answered that he loved the gun and that it "shot great." (*Id.*) Employee-2 assisted Mr. Teferi to select a holster and gave him one of the store display Stoeger firearms to check the gun's fit in the holster. (*Id.* ¶ 11.) Mr. Teferi tried the holster on before he purchased it while Ms. Kucko assisted him and stepped back to assess how the holster looked on Mr. Teferi. (Def. Ex. B at 6:00-6:30.) At one point, Mr. Teferi handed the holster to Ms. Kucko, who appeared to inspect the holster and perhaps hold it to her side. (*Id.* at 5:41.)

### C. Events of August 7, 2021

On August 7, 2021, Employee-3 was restocking Fleet Farm's ammunition aisle when Defendants approached him and asked to purchase .22 ammunition. (Def. Ex. A ¶ 14.) This request caught Employee-3 off guard because he knew Ms. Kucko had recently purchased the 9mm Stoeger. (*Id.*) During his conversation with Defendants, Mr. Teferi asked Employee-3 about 9mm hollow points for "his gun." (*Id.*) Mr. Teferi purchased two boxes of Full Metal Jacket ammunition and one box of hollow point ammunition for "his 9mm." (*Id.*)

---

[1] Defendants note that "[Judge Roberts] agrees that the video does not show [defendant] Teferi exhibiting any firearm to a store employee." (Doc. 44, at 8). But as Judge Roberts noted in his R&R, although the video surveillance does not show defendant Teferi with a firearm it also does not prove he did not show it to an employee as stated in the officer's affidavit. (Doc. 39, at 18-19). The Court, having reviewed the video surveillance, agrees with Judge Roberts. The conclusions stemming from this finding will be discussed below.

### D. Additional Information Based on Officer Saunders's Investigation

On December 17, 2019, Ms. Kucko applied for a new Iowa permit to carry weapons through the Blackhawk County Sheriff's Office. (*Id.* ¶ 7.) She received her permit on January 3, 2020. (*Id.*) Notes associated with her application state that Ms. Kucko had no criminal record and no previous firearms permits. (*Id.*)

Ms. Kucko purchased a Ruger 9mm semi-automatic pistol from Scheels in February 2020. (*Id.* ¶ 21.) Ms. Kucko also purchased a Canik/Century Arms 9mm semi-automatic pistol and a German Sport Guns .22 caliber rifle from Mr. Guns in July 2021. (*Id.* ¶ 19.) The owner of Mr. Guns stated that whenever Ms. Kucko was purchasing firearms, she was accompanied by "a tall, thin, light-skinned black male." (*Id.* ¶ 20.) Officer Saunders noted this description matches Mr. Teferi's general characteristics. (*Id.*)

On June 22, 2021, Mr. Teferi pleaded guilty to Assault Causing Bodily Injury and received a deferred judgment with one year of probation. (*Id.* ¶ 17.) Ms. Kucko was the victim in that case. (*Id.*) On the date of the assault in March 2020, Ms. Kucko told a Waterloo police officer that she and Mr. Teferi had been together four years. (*Id.*) Mr. Teferi said Ms. Kucko was his girlfriend and they had been living together for two years. (*Id.*) Officers on the scene seized Ms. Kucko's Ruger handgun and Mr. Teferi's Taurus handgun. (*Id.* ¶ 22.) Ms. Kucko's Ruger was returned to her on August 13, 2020 and Mr. Teferi's Taurus was returned to him on July 22, 2021. (*Id.*) Both Defendants list the same address, [XXXX] Ackermant Street, Waterloo, Iowa, in IDOT records. (*Id.* ¶ 24.)

Based on, inter alia, the above information, Officer Saunders suspected Ms. Kucko of firearms straw purchasing. (*Id.* ¶¶ 15.) Specifically, he believed she provided false or misrepresented information when she purchased the Stoeger on July 19, 2021. (*Id.* ¶¶ 16, 25.) At the time of that purchase, Ms. Kucko completed ATF Form 4473, answering "Yes" to question 21.a, which asked, "Are you the actual transferee/buyer of the firearm(s) listed on these forms?" (*Id.* ¶ 16.)

(Doc. 39, at 3-6) (footnotes omitted).

### IV.     ANALYSIS

In their motion to suppress, defendants argued that a *Franks* hearing would show that the affidavit in support of the search warrant contained false and misleading information, omitted material information, and that absent the false and misleading information would lack probable cause. (Doc. 27, at 7). Judge Roberts found that the affidavit did not contain misleading statements or omissions which, if corrected would have deprived the warrant of probable cause. (Doc. 39, at 25). He also found that even if the claimed misstatements of the affidavit were stricken or omissions added the affidavit would still support probable cause. (*Id.*). Thus, Judge Roberts denied the defendants' motion for a *Franks* hearing and recommended that the Court deny defendants' motion. (*Id.*).

Defendants object to Judge Roberts' conclusions denying them a *Franks* hearing. (Doc. 44, at 1). In their objections, defendants argue that they made the necessary preliminary showing that the Court cannot accept the allegations within the affidavit on its face. (Doc. 44, at 12). Next, defendants allege that the affidavit contains statements that are false and misleading, omits material information, and that taken together the affidavit does not establish probable cause. (*Id.*). Defendants also argue that the officer's failure to discuss what the video surveillance does not show could only be proven with a *Franks* hearing. (*Id.*). Defendants also allege that the employee statements are uncorroborated. (*Id.* at 11). In their objections defendants argue that they have made a substantial preliminary showing that the affidavit contains false statements without which the affidavit does not support probable cause. (*Id.*, at 10).

The Court will address each in turn.

### A.     Franks *Hearing*

For the Court to hold a *Franks* hearing defendants must "make[ ] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless

8

disregard for the truth, was included by the affiant in the warrant affidavit, and . . . the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978). "Allegations of negligence or innocent mistake are insufficient." *Id.*, at 171. Defendants carry the burden of producing an affidavit or evidence that the officer's statement is false. *United States v. Williams*, 669 F.3d 903, 905 (8th Cir. 2012); *See United States v. Mathison*, 157 F.3d 541, 548 (8th Cir. 1998) ("A mere allegation standing alone, without an offer of proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is insufficient to make the difficult preliminary showing [under *Franks*]."). And not every detail of the affidavit need be correct "[f]or probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165.

Thus, to receive a *Franks* hearing, defendants "must show both (1) that the affiant [ ] 'knowingly and intentionally' made false statements or made them in 'reckless disregard for the truth' and (2) if the false information is excised (or the omitted information is included), the affidavit no longer establishes probable cause." *United States v. Daigle*, 947 F.3d 1076, 1083 (8th Cir. 2020) (brackets in original).

In their objections to the R&R and at the hearing, defendants mainly relied on the video surveillance to show that the affidavit omitted material information and contained false and misleading information. But the video surveillance does not corroborate defendants' allegations. And defendants' other arguments lack an offer of proof that the statements in the affidavit are false.

Thus, the Court finds that defendants have not made a substantial preliminary showing that the statements in the officer's affidavit were knowingly and intentionally

9

Case 6:21-cr-02068-CJW-MAR   Document 46   Filed 12/27/21   Page 9 of 15

false or made with a reckless disregard for the truth. For the following reasons, defendants' objections to Judge Roberts' R&R are overruled.

### B. Video Surveillance

Defendants make the following arguments relating to the video surveillance: (1) that the officer misleadingly stated what the video from July 2nd shows, (Doc. 44, at 6), and (2) that the officer did not disclose in his affidavit that the video surveillance does not show defendant Teferi showing an employee a gun in his waistband (*Id.*, at 8).

#### (i) Audio on video from July 2nd

Defendants assert that in the affidavit in support of the search warrant, the officer falsely and misleadingly described the contents of the surveillance video. (Doc. 44, at 6). They contend that the affidavit misleads because it does not disclose that there is no audio in the video. Defendants argue that without audio the officer could not know the contents of any statements made on July 2nd and that the officer's statement about what the video appears to show is misleading and false. (*Id.*).

On July 2, 2021, defendant Teferi went to Fleet & Farm with defendant Kucko. (Doc. 39, at 3). Defendant Teferi selected a Stoeger Model STR-9 handgun ("Stoeger handgun") to purchase and was refused when he failed an NICS background check. (*Id.*). Here, to establish these facts, the affidavit relies upon video showing defendants entering the store and leaving without the handgun and officer's review of the paperwork defendant Teferi filled out on July 1, 2021, to purchase the gun. (Def. Exhibit A, at 9-10). Those facts are also established by the statements of Employee-1.

Defendants argue that the affidavit misleadingly stated that the "video surveillance appears to show that the sales associate informed [defendants], that due to the results of NICS background check, Fleet & Farm could not sell [defendant Teferi] the firearm he wanted to purchase[.]" (*Id.*, at 10). But there is nothing misleading about that statement. The officer only indicated what the video surveillance "appeared" to show him based on

10

his investigation. Defendants note that no video of this interaction was offered into evidence. (Doc. 44, at 6). But it is defendants' burden to show the falsity of the statement in the affidavit. *Williams*, 669 F.3d at 905. And the information in the affidavit is "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165. As Judge Roberts noted in the R&R, "Officer Saunders never represented that he could hear the video during this exchange." (Doc. 39, at 15). Defendants have only asserted that the video does not contain audio.

Thus, defendants have not made the necessary substantial preliminary showing for a *Franks* hearing. The Court finds that the affidavit contains the officer's truthful perception of what transpired on July 2nd and overrules defendants' objection to this portion of the R&R.

### *(ii)  Gun in waistband on July 27*

Defendants also argue that it is a material omission that the officer did not include in the affidavit the fact that the video surveillance from July 27, 2021, does not show defendant showing the employees of Fleet & Farm the Stoeger handgun in his waistband. (Doc. 44, at 7-8). Defendants argue that a *Franks* hearing is necessary to show the officer's failure to discuss this issue was negligent or intentional. (*Id.*, at 8).

Employee-1 reported that on July 27, 2021, Employee-1 saw defendant Teferi with the Stoeger handgun defendant Kucko purchased. (Def. Exhibit A, at 10). Employee-1 reported that defendant Teferi showed the Stoeger handgun to the sales associate and referred to it as "my gun[.]" (*Id.*). Defendants were purchasing a holster and the sales associate gave defendant Teferi a display Stoeger to try in the holster. (*Id.*). As the video shows, defendant Teferi used the display Stoeger to try the holster. (Def. Exhibit B, at 5:31-5-50). Employee-2 reported that defendant Teferi "asked [Employee-2] if the store had a holster for 'his gun.'" (Def. Exhibit A, at 11). Employee-2 then asked what brand of gun the defendant wanted a holster for and "[defendant Teferi] showed

11

Employee-2 his gun in his waistband." (*Id.*). Employee-2 immediately recognized the gun as a Stoeger. (*Id.*).

The affidavit relies upon the reports of Employee-1 and Employee-2 that defendant Teferi was carrying the Stoeger handgun that day. (Def. Exhibit A, at 10-11). Nevertheless, it is true that the video surveillance does not show defendant displaying the Stoeger handgun and that the affidavit does not disclose this ambiguity. The video does not prove, however, that defendant Teferi was not carrying the Stoeger handgun. As Judge Roberts noted, while defendant Teferi faces Fleet & Farm employees his hands and waist are not in view at all times of the video and at times his back is to the camera. (Doc. 39, at 18-19). There is opportunity for the gun to be shown. If the video persuasively showed that there was likely no weapon in defendant's waistband a *Franks* hearing may be called for. But the accounts of Employee-1 and Employee-2 corroborate each other and are not contradicted by the video. That the video does not corroborate their accounts does not suggest that the affiant knowingly and intentionally, or recklessly disregarded the truth in his affidavit. *Franks*, 438 U.S. at 155.

Thus, defendants did not meet their substantial preliminary burden for a *Franks* hearing. Judge Roberts found that "at worst Officer Saunders may have neglected to state that the Fleet Farm surveillance video does not clearly show [defendant] Teferi showing Employee-2 a firearm." (Doc. 39, at 19). The Court finds that the omission here was not a negligent misrepresentation. And even if it was a negligent misrepresentation, the officer's failure to include the ambiguous information about the video would not violate *Franks*. *United States v. Conant*, 799 F.3d 1195, 1201 (8th Cir. 2015). Thus, the Court overrules defendants' objections to this part of the R&R.

### C. *Information provided by employees*

Defendants argue that the affidavit misleadingly states which employees sold the Stoeger handgun on July 19th. (Doc. 44, at 7). Defendants also assert that "the

information provided by the employees was not corroborated by other sources and does not support probable cause." (*Id.*, at 11).

### *(i)     Stoeger handgun purchase on July 19*

Defendants argue that the affidavit is misleading and false because the affidavit states that Employee-1 reported defendant Kucko's purchase of the Stoeger handgun on July 19, 2021, but the affidavit also states that Employee-3 was the employee that completed the sale the same day. (Doc. 44, at 7). Judge Roberts concluded that multiple employees may have been present the day defendant visited the store. (Doc. 39, at 16). Defendants object that this is pure speculation. (Doc. 44, at 7). But there is nothing misleading or that calls for speculation in the affidavit about this sale. The affidavit plainly states that "[t]he ATF Form 4473 . . . shows that Employee-3 was the store employee who sold [defendant Kucko] that firearm. (Def. Exhibit A, at 11). Employee-1 reports that defendant Kucko purchased a handgun that day. (*Id.*, at 10). It takes little speculation to conclude that the employees were likely both present. What the affidavit does show is that both employees were involved with or aware of the sale and reported that knowledge to the officer. Defendants object that there is no evidence in the affidavit that Employee-1 worked that day. (Doc. 44, at 7). But it is defendants' burden to show the falsity of the statement in the affidavit. *Williams*, 669 F.3d at 905. Thus, it was incumbent upon defendants to show Employee-1 was not working that day, that the officer knew it, and the officer intentionally omitted that information from the affidavit. And even if Employee-1 was not present in the store that day the Court would not remove the statement from the affidavit because "probable cause may be founded upon hearsay[.]" *Franks*, 438 U.S. at 165. Here, defendants' argument is without merit, (Doc. 39, at 16), and their objection is overruled.

13

Case 6:21-cr-02068-CJW-MAR   Document 46   Filed 12/27/21   Page 13 of 15

### *(ii)  Employee accounts of July 27*

Defendants object that without the video surveillance the employee accounts of the July 27 holster sale are unreliable. (Doc. 44, at 11). Again, it is true that the video surveillance does not add to the employee accounts. But neither does it refute them.

At the outset an explanation of corroboration is instructive: "[t]he testimony of a witness is said to be corroborated when it is shown to correspond with the representation of some other witnesses, or to comport with some facts otherwise known or established." *Corroborate, Black's Law Dictionary* (6th ed. 1990). Here, each employee's statement corresponded with the representation of another employee strengthening the statements in the officer's affidavit. In the affidavit, each employee's account is supported by another source, that is, another witness. Judge Roberts also noted that the information defendants claim is not corroborated is in fact corroborated by Employee-1, Employee-3, and the officer's review of the evidence. (Doc. 39, at 20). Warrants based on such corroborating evidence were issued long before recorded video surveillance was pervasive and this case proves that even video surveillance is not as conclusive as parties might hope. Defendants offer no evidence indicating why the affiant or the Court should doubt the employee accounts let alone any indication that the officer knew they were false.

Thus, the Court overrules defendants' objections about the reliability of the employee accounts.

### D. *Affidavit timeline*

Defendants also assert that the timeline of the affidavit is misrepresented and obscured. (Doc. 44, at 11).

On July 22, 2021, the Iowa District Court returned a Taurus firearm to defendant Teferi. (Def. Exhibit A, at 12). The affidavit contains this information after detailing the events of July 27th. (*Id.*, at 10). Defendants argue that the return of the Taurus

14

handgun on July 22nd and the holster purchase on July 27th should have been presented together and that as it stands was an effort by the affiant to "separate and minimize that information[.]" But defendants present no evidence to carry their burden. *Williams*, 669 F.3d at 905. That the affiant presented the information in the affidavit in the order he did a mere two pages apart does not indicate to the Court any effort to hoodwink a judge into issuing a warrant.

Thus, the Court overrules defendants' objection to the R&R.

## V. CONCLUSION

For the reasons stated above, defendants' objections (Doc. 44) are overruled. The Court **adopts** Judge Roberts' R&R (Doc. 39) and **denies** defendants' Motion to Suppress (Doc. 27).

**IT IS SO ORDERED** this 27th day of December, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa